IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 2, 2015 Session

## HOMER L. CODY v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT00553413    Don R. Ash, Senior Judge**

**No. W2014-02003-SC-R3-BP – Filed July 27, 2015**

A hearing panel of the Board of Professional Responsibility determined that a Memphis attorney should be suspended from the practice of law for 180 days based on his violation of Tenn. Sup. Ct. R. 8, Rules of Professional Conduct 1.7(a), 8.4(a), and 8.4(d). The trial court affirmed the decision of the Hearing Panel. After careful consideration, we affirm the judgment of the trial court.

**Appeal Pursuant to Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Circuit Court Affirmed**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, and JEFFREY S. BIVINS, JJ., joined. HOLLY KIRBY, J., not participating.

Homer L. Cody, Millington, Tennessee, pro se.

William C. Moody, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

**I.**

This disciplinary action involves Memphis attorney Homer L. Cody's continued representation of two clients with conflicting interests. On August 13, 2002, Memphis attorneys Allan J. Wade, Lori H. Patterson, and W. Michael Richards filed an action in the Shelby County Chancery Court on behalf of Pee Wee Wisdom Child Development Center, Inc. ("the Center") and Vivian Braxton, the Center's executive director, against Paul G. Summers in his official capacity as Attorney General and Reporter for the State of Tennessee. The complaint alleged that the Attorney General, based on his

investigation, had indicated his intent to seek a judicial dissolution of the Center based on conflict of interest transactions between the Center and Ms. Braxton, the Center's failure to follow corporate formalities, and other transactions that the Attorney General believed constituted waste or misapplication of corporate assets. The complaint requested, among other things, that the Court declare the rights, status, and other legal relations of the Center and Ms. Braxton; determine that certain transactions between the Center and Ms. Braxton did not constitute a conflict of interest; declare that the failure of the Center's Board of Directors to meet and perform the functions required by law was not grounds for dissolution; determine that the Attorney General's allegations of misapplication of corporate assets by the Center were without merit; and oversee the dissolution of the Center if the Court determined that dissolution was required. By an agreed order entered on September 3, 2002, Robert Dinkelspiel was appointed Receiver for the Center.

On August 14, 2003, a grand jury indicted Ms. Braxton for two counts of theft of property over $60,000 and two counts of tampering with evidence in connection with her management of the Center. On December 2, 2003, Ms. Braxton pled guilty to theft of property between $10,000 and $60,000 from the Center.

On November 15, 2004, Mr. Cody entered a notice of appearance for the Center and Ms. Braxton in the Chancery Court action against the Attorney General. On November 19, 2004, the Receiver sent a letter to Mr. Cody requesting that the notice of appearance be amended to reflect that Mr. Cody only represented Ms. Braxton. On February 1, 2005, Mr. Cody responded that he could represent both the Center and Ms. Braxton.

In an August 28, 2006 order, the Chancellor approved a report filed by the Receiver which determined that Ms. Braxton had failed to perform her fiduciary responsibilities as a director and an officer of the Center, had failed to ensure that the Center's resources were used to achieve its charitable purposes, and had failed to render an account of the assets and funds of the Center. The Chancellor awarded the Receiver a judgment for $296,190.50 against Ms. Braxton. On September 26, 2006, Mr. Cody filed a notice of appeal on behalf of the Center and Ms. Braxton.

On January 31, 2007, while the case was before the Court of Appeals, the Receiver filed a motion in the Chancery Court to disqualify Mr. Cody from representing Ms. Braxton and the Center. In an order entered on June 22, 2007, the Chancellor denied the motion to disqualify Mr. Cody. Thereafter, the Receiver appealed the Chancellor's order denying his motion to disqualify. In a January 29, 2008 order, the Court of Appeals ruled that Mr. Cody was disqualified from representing either Ms. Braxton or the Center in the appeal or any other matters relating to the litigation. On November 13, 2009, Mr.

Cody filed a subpoena in the Chancery Court action on behalf of the Center and Ms. Braxton directing the Receiver to appear and testify. The Receiver filed a motion to quash Mr. Cody's subpoena. On December 4, 2009, the Chancellor granted the motion and, referencing the Court of Appeals' ruling, held that Mr. Cody was disqualified from representing the Center or Ms. Braxton in any matter relating to the Chancery Court litigation. On March 31, 2010, Mr. Cody, on behalf of Ms. Braxton and the Center, filed a motion in the Chancery Court action to declare null and void, to set aside, and to vacate all orders entered in the case.

On June 23, 2010, the Receiver filed a motion for contempt in the Court of Appeals based on Mr. Cody's continued representation of Ms. Braxton. On August 27, 2010, the Court of Appeals ruled that Mr. Cody had a conflict of interest in his representation of Ms. Braxton and the Center and ordered Mr. Cody to refrain from representing or purporting to represent Ms. Braxton or the Center. The Court of Appeals directed the Clerk to advise the Board of Professional Responsibility of its ruling.

On February 3, 2011, the Board filed a petition for discipline against Mr. Cody, alleging violations of Tenn. Sup. Ct. R. 8, Rules of Professional Conduct[1] ("RPC") 1.7,[2] 3.1,[3] and 8.4.[4] A Hearing Panel concluded that Mr. Cody had a conflict of interest by

---

[1] This Court adopted substantial changes to the Rules of Professional Conduct, effective January 1, 2011. While the Board, in its first petition for discipline, asserted violations of the pre-2011 version of the rules, we apply and have cited the current version of the rules in this case, which involves conduct that occurred after January 1, 2011. We note, however, that the relevant provisions of the pre-2011 version of the rules do not differ from the current version in any significant way relating to this case.

[2] "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Tenn. Sup. Ct. R. 8, RPC 1.7(a).

[3] "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." Tenn. Sup. Ct. R. 8, RPC 3.1.

representing both the Center and Ms. Braxton and that his continued representation of those clients violated Tenn. Sup. Ct. R. 8, RPCs 1.7, 3.1, and 8.4. The Hearing Panel recommended a public censure. Mr. Cody did not appeal. On January 6, 2012, the Board approved the recommendation for a public censure of Mr. Cody. On March 16, 2012, this Court issued an Order of Enforcement that publicly censured Mr. Cody.

On March 6, 2012, after the Hearing Panel's decision, but before its approval by this Court, Mr. Cody filed a motion in the Chancery Court on behalf of the Center and Ms. Braxton, asking the court to declare null and void, to set aside, and to vacate all orders issued by the Chancery Court in the original action. On March 20, 2012, the Center's attorney, Michael McLaren, filed a motion to strike all pleadings filed by Mr. Cody on behalf of the Center and Ms. Braxton. On April 10, 2012, the Chancellor granted the motion and ordered that all the pleadings filed by Mr. Cody be stricken, based on its finding that Mr. Cody had a conflict of interest by representing both the Center and Ms. Braxton in the same proceeding.

On August 2, 2012, the Board filed a second petition for discipline against Mr. Cody, alleging that Mr. Cody had violated Tenn. Sup. Ct. R. 8, RPCs 1.7(a), 3.3(a),[5] 8.4(a), and 8.4(d). On September 5, 2012, Mr. Cody filed a Racketeer Influenced and Corrupt Organizations Act ("RICO") complaint in the federal district court on behalf of the Center and Ms. Braxton. In the RICO complaint, Mr. Cody sued the attorneys and judges who participated in the Chancery Court proceedings involving the Center and Ms. Braxton, characterizing these individuals as "judicial mobsters" who were "operating within the Tennessee judicial system and using the system to steal, embezzle, defraud, and to carry out other illegal activities."

On February 14, 2013, the Board filed a supplemental petition for discipline against Mr. Cody based on his representation of the Center and Ms. Braxton in the federal court action. The supplemental petition alleged violations of Tenn. Sup. Ct. R. 8, RPCs 1.7(a), 3.1, 3.4(c),[6] 4.4(a)(1),[7] 8.2(a),[8] 8.4(a), and 8.4(d). A Hearing Panel

---

[4] "It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct . . . [or] engage in conduct that is prejudicial to the administration of justice." Tenn. Sup. Ct. R. 8, RPC 8.4(a), (d).

[5] "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal[.]" Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1).

[6] "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]" Tenn. Sup. Ct. R. 8, RPC 3.4(c).

concluded that Mr. Cody had violated Tenn. Sup. Ct. R. 8, RPCs 1.7, 8.4(a), and 8.4(d) by his continued representation of Ms. Braxton and the Center. Based on the *ABA Standards for Imposing Lawyer Sanctions* ("ABA Standards"), section 9.22, the Hearing Panel found the following aggravating factors were applicable: prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law. The Hearing Panel recommended that Mr. Cody be suspended from the practice of law in Tennessee for 180 days.

Mr. Cody appealed to the Shelby County Circuit Court. The trial court conducted a hearing and, by order entered on September 4, 2014, affirmed the Hearing Panel's findings of fact and conclusions of law. An amended order, which corrected two minor discrepancies in the original order, was filed on September 30, 2014.

Mr. Cody appeals to this Court and argues that the Board did not have probable cause to bring suit; the Board, the Hearing Panel, and the trial court did not have jurisdiction to hear the case; the Hearing Panel abused its discretion and authority; the Board's decision violated Mr. Cody's rights of due process and equal protection; the Board, the Hearing Panel, and the complainants abused their discretion by fraudulently misrepresenting and omitting material facts to support their findings and decisions; the Board or the Court of Appeals used the improper standard of review; and the evidence presented was not legally sufficient to support the Hearing Panel's judgments.

## II.

The Supreme Court of Tennessee is the source of authority for the Board of Professional Responsibility and all of its functions. *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000). As part of our duty to regulate the practice of law in Tennessee, we bear the ultimate responsibility for enforcing the rules governing our profession. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469-70 (Tenn. 2003). We review judgments under our "inherent power and essential and fundamental right to administer the rules pertaining to the licensing of attorneys." *Skouteris v. Bd. of Prof'l*

---

[7] "In representing a client, a lawyer shall not . . . use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person[.]" Tenn. Sup. Ct. R. 8, RPC 4.4(a)(1).

[8] "A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of . . . a judge; . . . an adjudicatory officer or public legal officer; or . . . a candidate for election or appointment to judicial or legal office." Tenn. Sup. Ct. R. 8, RPC 8.2(a).

*Responsibility*, 430 S.W.3d 359, 362 (Tenn. 2014) (quoting *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 640 (Tenn. 2008)).

When reviewing a hearing panel's judgment, a trial court must consider the transcript of the evidence before the hearing panel, as well as the hearing panel's findings and judgment. Tenn. Sup. Ct. R. 9, § 1.3 (2013)[9] (current version at Tenn. Sup. Ct. R. 9, § 33.1(b)). With respect to questions of fact, the trial court should not substitute its own judgment for the conclusions of the hearing panel regarding the weight of the evidence. *Skouteris*, 430 S.W.3d at 362 (citing *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 323 (Tenn. 2009)). Further, any modification to a hearing panel's decision must be based upon one of the factors enumerated in Tennessee Supreme Court Rule 9, section 1.3. *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 652 (Tenn. 2008). Specifically under section 1.3, a trial court may reverse or modify a hearing panel decision only if the petitioner's rights have been prejudiced because the hearing panel's findings, inferences, conclusions, or decisions are:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3.

Our standard of review on appeal is the same as that of the trial court. *Mabry v. Bd. of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) (citing *Skouteris*, 430 S.W.3d at 362).

After carefully reviewing the issues raised by Mr. Cody, the entire record, briefs filed by the parties, and all applicable authority, we find that none of Mr. Cody's arguments have merit. Based on our standard of review, we hold that there was no violation of either constitutional or statutory provisions; the Hearing Panel did not act in excess of its jurisdiction; there was no unlawful procedure; the result reached was not arbitrary, capricious, or characterized by an abuse of discretion; and Mr. Cody's suspension was fully supported by evidence which is both substantial and material in light of the entire record.

---

[9] This Court adopted substantial changes to Tennessee Supreme Court Rule 9, effective January 1, 2014. However, because this case was initiated before January 1, 2014, it is governed by the pre-2014 version of Tennessee Supreme Court Rule 9.

Mr. Cody's conduct was egregious. On November 15, 2004, Mr. Cody began representing two clients with conflicting interests. When Mr. Cody entered his appearance in the Chancery Court action, Ms. Braxton had already pled guilty to theft of property from the Center. Thereafter, the Center's Receiver was awarded a judgment against Ms. Braxton in an amount in excess of $296,000. Although the Chancellor, with no explanation, denied a motion to disqualify Mr. Cody from representing the Center and Ms. Braxton in June 2007, the Court of Appeals subsequently ruled that there was a conflict of interest between Mr. Cody's two clients and disqualified Mr. Cody from representing either the Center or Ms. Braxton. Later, the Chancellor held that Mr. Cody could not represent Ms. Braxton or the Center in any matters relating to the litigation pending in Chancery Court. Mr. Cody ignored both of these orders.

On March 16, 2012, Mr. Cody was publicly censured for his representation of the Center and Ms. Braxton. At this point, Mr. Cody should have understood that he was ethically prohibited from representing Ms. Braxton and the Center because of their adverse interests. The public censure should have been the end of it. But it was not. Mr. Cody had not learned his lesson. Instead, he forged ahead by filing a motion in the Chancery Court for the two parties, ignoring the orders of the Chancery Court and the Court of Appeals, and the public censure. This precipitated a second petition for discipline. Undaunted, Mr. Cody persevered. He filed a federal court action for the Center and Ms. Braxton against the lawyers and judges involved in the original Chancery Court action, labeling them "judicial mobsters." Not surprisingly, the Board filed a supplemental petition for discipline against Mr. Cody, which resulted in the Hearing Panel's decision that Mr. Cody should be suspended for 180 days. The evidence clearly shows that Mr. Cody violated Tenn. Sup. Ct. R. 8, RPC 1.7(a) by representing "a client [when] the representation involve[d] a concurrent conflict of interest," and that he engaged in professional misconduct in contravention of sections 8.4(a) and (d) by "violat[ing] the Rules of Professional Conduct" and by "engag[ing] in conduct that [was] prejudicial to the administration of justice."

For this misconduct the Hearing Panel and the trial court determined that a 180-day suspension was appropriate. When reviewing attorney discipline, we are guided by the ABA Standards for determining the appropriateness of such discipline. *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 617 (Tenn. 2010). The ABA Standards promote the "consideration of all factors relevant to imposing the appropriate level of sanction in an individual case." *Mabry*, 458 S.W.3d at 910 (quoting *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 28 (Tenn. 2012)).

Mr. Cody's suspension is consistent with section 8.2 of the ABA Standards, which states that "[s]uspension is generally appropriate when a lawyer has been reprimanded for

the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." ABA Standards § 8.2. This Court previously publicly censured Mr. Cody for violations of Tenn. Sup. Ct. R. 8, RPCs 1.7, 3.1, and 8.4 because of his representation of the Center and Ms. Braxton in the same proceeding. Despite the public censure, Mr. Cody repeated the same unethical conduct. Mr. Cody consistently flouted the authority of the Chancery Court, the Court of Appeals, and this Court.

We hold that a suspension is warranted based on Mr. Cody's misconduct. We agree with the Hearing Panel and the trial court that there are five applicable aggravating factors under section 9.22 of the ABA Standards: prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law. We find no mitigating factors under section 9.32 of the ABA Standards.[10]

An attorney may be suspended for a period of time between thirty days and five years. Tenn. Sup. Ct. R. 9, § 4.2 (2013) (current version at Tenn. Sup. Ct. R. 9, § 4.2). Given Mr. Cody's multiple rule violations, prior disciplinary record, repeated inability to follow court orders, refusal to acknowledge his misconduct,[11] and his more than thirty years of experience as a licensed attorney, a 180-day suspension from the practice of law is appropriate and fully supported by the evidence.

---

[10] Mitigating factors include:

> (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse . . . [;] (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.

ABA Standards § 9.32.

[11] When asked at the June 17, 2013 Hearing Panel proceedings to acknowledge that he had a conflict of interest by representing the Center and Ms. Braxton, Mr. Cody replied without hesitation: "No. Based on the Chancery Court order, I have to deny that."

## Conclusion

The judgment of the Shelby County Circuit Court is affirmed. Homer L. Cody is suspended from the practice of law for 180 days. The costs of this appeal are taxed to Homer L. Cody.

_____

SHARON G. LEE, CHIEF JUSTICE